## STATE v. GUSTAV SCHNACHTEL, ALIAS GUSTAV SCHAEFER, INDICTED WITH OTHERS.[1]

December 7, 1923.

No. 23,594.

**Indictment for robbery not bad.**
1. An indictment for robbery charging defendant with the felonious taking of the property of A, in the presence and against the will of B, by force and violence, is not fatally defective because it fails to aver that B had any relationship to A, or the possession or control of the property or any duty with respect to it. It was not necessary that the indictment negative the idea that B might have been a stranger to both the property and its owner.

**Corroboration of witness whose credibility was in question admissible.**
2. A witness testified to an admission made by defendant in St. Paul in October, 1920, that he had participated in a hold-up in Minneapolis a few days before. There was no objection to that testimony, and proof of defendant's presence in St. Paul at that time was material. Cross-examination made sure that the credibility of the witness would be attacked and his entire testimony, particularly that as to defendant's presence in the Twin Cities in October, 1920, would be branded as false by opposing testimony. In such circumstances it was proper to corroborate the witness by the testimony of the victim to the fact of the hold-up, complicity in which the witness said defendant had admitted.

Defendant, with others, was indicted by the grand jury of Ramsey county charged with the crime of robbery in the first degree, tried separately in the district court for that county before Olin B. Lewis, J., and a jury, and found guilty as charged in the indictment. From an order denying his motion to change the conviction to grand larceny in the first degree or for a new trial, defendant appealed. Affirmed.

*T. W. McMeekin, H. Diehl* and *Frank B. Carr,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Harry H. Peterson,* County Attorney, for respondent.

[1]Reported in 196 N. W. 674.

STONE, J.

After conviction of robbery in the first degree, defendant moved in the alternative for an order modifying the judgment so as to reduce the conviction to one of grand larceny in the first degree, or, in the event of the denial of that motion, for a new trial. Both motions were denied and defendant appeals.

The first point made is that the indictment is defective in that, while charging the felonious taking of the property of Shapira Brothers in the presence and against the will of one Deeny, it does not charge that the latter had any "special interest in or charge or control over the property taken."

The statute, section 8635, G. S. 1913, defines robbery as "the unlawful taking of personal property from the person of another or in his presence, against his will, by means of force or violence, or fear of injury, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery."

The property, jewelry of very considerable value, was taken from the store of Shapira Brothers in St. Paul. Deeny was the clerk in charge of the stock and premises at the time of the robbery. It might have been better pleading to have indicated in the indictment his relationship to the stolen property. However, it was not necessary. The statutory essentials of robbery are: (1) The unlawful taking; (2) the taking from the person or in the presence of the owner or *another* against his will; and (3) the use of force or violence or fear of injury to obtain or retain possession of the property.

The indictment sets forth these essentials, and we cannot hold it fatally deficient because it failed to negative the idea that Deeny might have been a stranger to the property and its owners. It was sufficient to apprise defendant of the charge made against him. The attack on the indictment, while made with sincerity, goes to a pure technicality and cannot prevail.

The position of appellant is founded upon State v. Montgomery, 181 Mo. 19, 79 S. W. 693, 67 L. R. A. 343, 2 Ann. Cas. 261, and State v. Hall, 54 Wash. 142, 102 Pac. 888. The latter followed and applied State v. Lawler, 130 Mo. 366, 32 S. W. 979, 51 Am. St. 575,

which, however, was overruled in State v. Montgomery, supra. Whether upon the precise point now under consideration is immaterial for the statute of Missouri, which controlled both State v. Lawler and State v. Montgomery, defined robbery as the felonious taking of "the property of *another* from *his* person, or in *his* presence, and against *his* will, by violence to *his* person, or by putting *him* in fear of some immediate injury to his person." Obviously, our statute is so different that the Missouri decisions are not applicable. Under modern statutes defining robbery, the right of ownership or control of stolen goods is immaterial, so long as it is not in the robber. See annotation of State v. Montgomery, supra, in 2 Ann. Cas. 264. People v. Madas, 201 N. Y. 349, 94 N. E. 857, Ann. Cas. 1912B, 229, 23 R. C. L. 1154. It is no longer necessary to load an indictment with immaterial averments in order successfully to fortify against technical objection.

The only other assignment of error challenges the admission of the testimony of a witness to the effect that on the afternoon of October 4, 1920, in Minneapolis, while carrying her employer's money to a bank, she was held up and robbed by three men. She identified one as Max Harris who was indicted with defendant. The others she could not identify. The effort of the state was to connect defendant with that crime, and the evidence would have been entirely out of place, and its introduction prejudicial error were it not for facts now to be stated.

The Shapira store had been robbed twice: Once, on October 29, 1920, and again on November 3, 1921. Defendant was tried and convicted for participation in the second offense, and there was evidence that he participated in the first also. His defense was an alibi. He testified that he was not in Minnesota in October or November, either in 1920 or 1921.

One Sudmeier, a witness for the state, testified, without objection, that defendant was in the Twin Cities in October, 1920, that he had seen and talked with him on several occasions during that month. On one of such occasions, a few days after the hold-up in Minneapolis of the young lady referred to above, the witness testified that defendant admitted complicity in that crime and explained that he did it because he needed "expense money."

Sudmeier was subjected to a long and exacting cross-examination. The purpose of it was to impress the jury with his alleged bad character and to convince them that his testimony concerning his meetings with defendant in October, 1920, was false. It became advisable therefore to corroborate him to the utmost possible extent.

Accordingly, the young lady, who had been the victim of the holdup, was placed upon the witness stand and testified, over defendant's objection, as to that happening. It is that testimony which is assigned as error. No such claim is made as to the testimony of Sudmeier or any part of it.

The testimony of the young lady was offered solely in corroboration of Sudmeier and we think it was properly received. Where a witness it attacked, as was Sudmeier, and it is reasonably sure that his entire testimony is to be branded by opposing proof as a fabrication, it is permissible to corroborate every element of it. At least, trial courts have a large discretion in receiving corroborative evidence. Therefore, rulings admitting such evidence will not be interferred with except for a clear abuse of discretion. There was such a clear issue as to Sudmeier's credibility that additional and independent proof of the holdup of the young woman was properly admitted to corroborate Sudmeier's statement that defendant had confessed participation in that crime, committed in Minneapolis at a time when defendant claimed to have been in California.

Order affirmed.

DIBELL, J. (dissenting)

I am unable to agree that the testimony of the young woman that she was robbed by Harris a year before in Minneapolis, and that there were two unidentified men with him, one of whom the state would have the jury assume to be the defendant, was competent.